Birchard, J.
A determination of two questions will dispose of this case —
First: Was the bond good under the statute ?
This question will be solved when we ascertain whether it operated to supersede the ca. sa. By the record, we learn that the judgment sought to be superseded had been removed, by writ of error, in October, 1840, to the Supreme Court of the *619 county; that the parties had entered an appearance voluntan1y; that the cause was submitted to the Court upon the circuit, and, by the judges, reserved for decision in Bank. The bond was delivered to the clerk and approved on the 13th day of August, 1841, about ten months after the jurisdiction of the Supreme Court, by consent of defendant and the assent of plaintiff, became complete. It took effect, if ever, as a valid bond, on the day of its delivery to the clerk, and from the moment he indorsed his approval upon it. By the statute, (Swan’s Stat. 679,) “No writ of error shall operate as a su- * persedeas to any execution issued on any final judgment of ‘ the Court of Common Pleas, unless the clerk, before signing { the citation, shall take a bond from the applicant to the adverse ‘ party,” &c. This statute is imperative. There is not much room left for construction, because its meaning is obvious and cannot be mistake^. It changes the rule of the common law, and introduces a new principle. Before the statute changed the law, the writ of error removed the entire proceeding from the inferior to the superior court, and left nothing remaining for the former to act upon. It took from the former the judgment and vacated it, with all its incidents. The force and effect of the statute requires the bond to be filéd before the Supreme Court obtains jurisdiction of the parties to the writ of error. This is of the essence of the act. In the case under consideration, the Supreme Court had full jurisdiction near ten months before the delivery of the bond, by the acts and consent of both parties, or it never had jurisdiction. The defendants must take one or the other of these positions. If the first, and they treat the entry of an appearance by Mr. Cowen as the equivalent of a citation, and as substituted by the consent of both parties for a citation' — and we think they must so treat it — it then follows that the bond came too late, and is.not good, as a statutory bond. The object of such a bond is to affect the writ of error and cause it to supersede the execution. That was its consideration. It failed in that object, and, there *620 fore, under the statute, failed altogether, unless there is some rule of the common law which will [give it support. Against this view it has been urged, that the bond was filed in time; that, inasmuch as no citation has yet been signed and none ever issued, it was literally filed before “ citation signedthat the statute being derogatory to the" rules of common law, must be strictly construed, and the words must be literally taken. This argument is like a two-edged sword, for it cuts more ways than one. If no citation has been issued, and nothing equivalent can supply its place, it inevitably follows, that no action whatsoever could be maintained upon the bond. Upon that hypothesis, the condition could not be forfeited. The Bank could have no right under it. Without a writ of error, a citation or its equivalent, a judgment or affirmance by the Supreme Court, a mandate and execution returned no goods, there could be no proceeding upon a valid bond.'
We proceed to consider, secondly, whether the bond is good at common law.
To be good at common law, there must have been parties able to contract, their minds must have united in making the contract, and upon a good consideration, which consideration must have been the one agreed to, and existing as executory or executed, at the delivery of the bond.
Now, to strip the question of all embarrassment, in order that we may have a clear conception of the law, let us for a moment lay out of view the entire proceedings before Judge Rogers, and then see if there was any, and if so, what consideration for the bond at the time it was delivered and took effect. We may well do this, for it is not to be supposed that any lawyer will seriously contend that his subsequent opinion or decision upon the habeas corpus, be it right or wrong, can in any way affect the obligation of the parties to a prior executed bond. Whatever may have been the rights of the parties, either at common law or under the statute, they were in no sense dependent upon Judge Rogers. He could neither enlarge or dimin *621 .ish their obligation. The bond was good without his aid, or good for nothing in spite of him. As a common law bond, then, there must have been a consideration. In this case, sole consideration was that it should operate to supersede the ca. sa. on which McKee was held in custody. It was executed upon this supposed consideration, and so delivered to the clerk. But we have already seen that it had legally no such effect — already seen that third parties could not add any vigor to it beyond what had been imparted to it by its makers. Suppose Judge Rogers had not erred, but had held, as he should, that the writ of error did not supersede the execution, where, then, would have been the consideration which would have sustained the bond at common law ? It is very clear that there would be none. The faet that he did not so decide can make no difference. A judicial error of an Associate Judge of the Common Pleas was not the thing contracted for, or if so, was not a valid consideration. The discharge of McKee by him was not what was stipulated for. If it were so, another serious objection would exist: it would be void as a bond given for ease and favor. The common law would not sustain a bond having no other consideration than the violation of duty by a public officer. We therefore are constrained to say that the Court of Common Pleas erred in refusing to give the second and third instructions, as prayed for by plaintiff’s counsel, and in charging that the discharge of McKee was the consideration, and sufficient.
This disposes of the case, and renders it unnecessary to pass upon any of the other points made. But thus far I have proceeded without noticing one of the cases cited by counsel. This has been done solely with a view of enabling me to make the decision as clear as possible. The questions are intricate and interesting in themselves. The case in which questions of this kind have been considered with most ability, is Zinn’s case, 15 Pet. Rep. That sustains the cases in replevin cited for defendant from the Massachusetts Reports, and 10 Ohio Reports. *622 O-ur decision, upon the closest scrutiny, will be found to contain nothing in conflict with the sound principles established in those cases. In each one of those cases the obligors received the precise consideration contracted for, and that consideration existed as executory or executed, at the delivery of the bond.
Another position has been taken for the defendant in error which deserves notice.
It is said that McKee and his surety, Bayless, are estopped from denying that the bond superseded the ca. sa. That the main object of filing the bond was to procure the release of McKee, which object was attained, under circumstances amounting to an estoppel in pais. Let it be always borne in mind that Bayless is a surety, that his only act in the whole matter was the affixing his signature as surety of McKee, at the date of the bond, and his happening to be in Court and remaining silent during the proceedings upon the habeas corpus. What had been done prior to that trial by him was altogether beyond his control. He then had no right to interfere with that proceeding, and his silence in no sense operated as a fraud upon the bank. There is no ground to say he is estopped from averring the truth.

Judgment Reversed,